KAMQoreS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   UNITED STATES OF AMERICA
3
                 v.                        15 CR 333 (LTS)
4                                          Sentence

5  ZIV ORENSTEIN

6                 Defendant
   ------------------------------x
7
                                           New York, N.Y.
8                                          October 22, 2010
                                           9:00 a.m.
9

10 Before:

11                HON. LAURA TAYLOR SWAIN
                                        District Judge
12

13                      APPEARANCES

14 AUDREY STRAUSS
        Acting United States Attorney for the
15      Southern District of New York
   EUN YOUNG CHOI
16      Assistant United States Attorney

17 ALAN S. FUTERFAS
        Attorney for Defendant
18      -and-
   ELLEN RESNICK
19      Attorney for Defendant

20

21

22

23

24

25

1        (Case called)

2        THE COURT:  Again, good morning.

3        Counsel, would you kindly state your appearances.

4        MS. CHOI:  Good morning, your Honor.

5        Eun Young Choi on behalf of the government.

6        THE COURT:  Good morning, Ms. Choi.

7        MR. FUTERFAS:  Alan Futerfas for Mr. Orenstein.

8   Joined by my associate Ellen Resnick.

9        THE COURT:  Good morning, Mr. Futerfas, Mr. Orenstein

10  and Ms. Resnick.  Please give me just a moment.

11       Greetings to any and all who are listening in on the

12  telephone line.  We are here today for sentencing.  I have

13  received and reviewed the presentence investigation report,

14  which is dated April 29, 2020, including the recommendation and

15  addendum, as well as the defendant's sentencing memorandum

16  submitted October 8, 2020, which was accompanied by four

17  letters of support from the defendant's friends and family

18  members, and a letter submission from the government which was

19  dated October 15, 2020, and a proposed consent order of

20  forfeiture; in addition, a proposed order of judicial removal

21  with supporting documentation comprising a concurrence of the

22  Immigration and Customs Enforcement Agency, a police statement

23  in support of judicial removal, and a notice of intent to

24  request judicial removal and factual allegations in support of

25  judicial removal.

1          The Court has granted the parties' applications for

2     sealed filings of their sentencing submission for the reasons

3     stated in an order that has also been filed under seal, and the

4     Court has directed defense counsel to file on ECF the letters

5     of support with redaction of the writer's contact information.

6          Are there any other written submissions that the

7     parties have intended me to consider in connection with the

8     sentencing?

9          MS. CHOI:  No, your Honor.

10          MR. FUTERFAS:  Your Honor, just so the record is

11     clear, we submitted a very brief response to the probation

12     report dated June 16, 2020.  The changes in this -- this was to

13     the probation department.  The changes in the report were

14     almost all ministerial:  Name misspellings, things like that.

15     I don't know if your Honor has that or not, but I know that was

16     submitted to probation.  I don't know if it was submitted to

17     the Court.

18          THE COURT:  No, I didn't receive a copy of a

19     communication to probation, and I believe the most recent

20     iteration of the presentence report is the April 29 one, at

21     least the most recent one I've seen.  And Ms. Choi is

22     indicating that is the most recent one she's seen.

23          Ms. Choi?

24          MS. CHOI:  Your Honor, if I recall the correspondence

25     that Mr. Futerfas received back from probation, the officer

1   indicated that the time has passed for amending the PSR, but to

2   the extent that there are ministerial changes to the PSR, I

3   presume if they are material in some way that we could do that

4   if the letter is provided to the court --

5           MR. FUTERFAS:  They're not material to your Honor's

6   sentencing at all.  There were some corrections to names and

7   spellings and things like that.  It was a short letter.  It's

8   not material to what we're discussing today.

9           THE COURT:  Are these changes that you would want made

10  in the final official version of the PSR?

11          MR. FUTERFAS:  As I review it now again -- I reviewed

12  it of course in preparation for today -- the answer is no.  I

13  don't think they are even material enough to make a difference

14  in the final PSR.

15          THE COURT:  Very well then.  Thank you.

16          Ms. Choi, would you please make a statement regarding

17  the government's victim identification and notification

18  activities in connection with this proceeding.

19          MS. CHOI:  Yes, your Honor, per the normal procedures

20  of the office and with the Federal Bureau of Investigation and

21  the United States Secret Service, there have been victim

22  notifications with regard to this particular case and including

23  the proceedings with regard to Mr. Orenstein.

24          THE COURT:  Thank you.  The indictment, the S3

25  indictment, is currently sealed as is the clerk's docket minute

1    reflecting the guilty plea.  Is there any objection to those

2    being unsealed now?

3            MS. CHOI:  No, your Honor.  I believe just for clarity

4    of the record, the S3 superseding information --

5            THE COURT:  Information, I'm sorry.

6            MS. CHOI:  -- to which Mr. Orenstein pleaded guilty.

7    The government has no objection to the unsealing of the

8    information and the fact of the entry of the information in the

9    plea.

10           THE COURT:  Mr. Futerfas.

11           MR. FUTERFAS:  Neither do we, your Honor.  Thank you.

12           THE COURT:  Very good.

13           And I direct you, counsel, to meet and confer and by

14   November 4, 2020 submit a letter as to what else can be

15   unsealed at this point and the justification for maintaining

16   anything else that you don't want unsealed under seal.

17           MS. CHOI:  Understood, your Honor.

18           THE COURT:  Thank you.

19           Mr. Futerfas, have you read the entire presentence

20   report and discussed it with Mr. Orenstein?

21           MR. FUTERFAS:  Yes, we have, your Honor.

22           THE COURT:  And, Mr. Orenstein, have you yourself

23   reviewed the entire presentence report?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  And have you discussed it with your

1   attorney?

2            THE DEFENDANT:  Yes, I have.

3            THE COURT:  Thank you.  Mr. Orenstein, you can be

4   seated.

5            Mr. Futerfas, you just indicated that the minor

6   objections you had had are not ones that you need to press at

7   this point.  Do you have any other issues with respect to the

8   content of the report that you wish to address?

9            MR. FUTERFAS:  No, we do not, your Honor.

10           THE COURT:  Thank you.

11           Ms. Choi, does the government have any objections or

12  other issues with respect to the content of the report?

13           MS. CHOI:  None, your Honor.

14           THE COURT:  Is the government applying to have

15  Mr. Orenstein credited with the third point for acceptance of

16  responsibility?

17           MS. CHOI:  Yes, your Honor.

18           THE COURT:  That application is granted, and the third

19  point is reflected in the computations in the presentence

20  report.

21           Ms. Choi, what is the government's position as to

22  restitution?

23           MS. CHOI:  Your Honor, in this case we did -- despite

24  the victim notification and in light of the specific charges to

25  which Mr. Orenstein pleaded guilty, we don't have any

1   restitution with regard to this defendant at this time that the

2   government is seeking.

3           THE COURT:  Now, is that because the government

4   believes that there are not victims of this defendant's conduct

5   or that you are taking the position under Section

6   3663(a)(1)(B)(ii) that complication and prolongation of the

7   sentencing process resulting from fashioning of an order of

8   restitution would outweigh the need to provide restitution to

9   victims such that the Court should not make a restitution

10  order?

11          MS. CHOI:  Your Honor, it's the latter of the two.

12          THE COURT:  All right.  Based on that representation,

13  the Court will decline to order restitution in connection with

14  this sentencing.

15          Ms. Choi, I will have a series of questions for you,

16  just to warn you.  In the presentence report the probation

17  department used a loss amount of $400 million.  Is that to your

18  knowledge calculated by reference to profits and amounts of

19  money laundering as opposed to actual losses to victims

20  associated with this defendant?

21          MS. CHOI:  Yes, your Honor.  I think to clarify, the

22  vast majority of that sum constitutes an estimate as to the

23  total volume of illegal online gambling that occurred that

24  would implicate the United States-based players who are making

25  illegal deposits and getting illegal credits from the online

1  casinos that Mr. Orenstein helped operate, as well as illegal

2  online payment processing.  So it represents the sum of the

3  transactions, but I think that is a different question than a

4  victim's loss or a pecuniary loss that would be due to any of

5  the individuals at hand.

6          THE COURT:  Thank you.

7          Now, with respect to the proposed order of forfeiture,

8  would you explain the basis for the computation of that sum and

9  the provisions in that order?

10          MS. CHOI:  Yes, your Honor.  The forfeiture is

11  obviously slightly different in light of *Honeycutt* and the

12  like.  The amount that is reflected in the forfeiture -- excuse

13  me, I'm having a little difficult through the mask.

14          The amount that's represented in the forfeiture

15  judgment represents the actual amount of money that

16  Mr. Orenstein received over the course of his involvement in

17  the organization.  So, it is a sum of his salary, plus he was

18  given a portion of the profits.  A fraction of the profits is

19  somewhat -- I guess one could interpret it as a bonus.  And so

20  we took spreadsheets that Mr. Orenstein had on his computer and

21  his own estimates and explanations, and that's the amount

22  that's reflected there.

23          THE COURT:  Thank you.

24          Mr. Futerfas, have you and Mr. Orenstein reviewed and

25  discussed the proposed consent preliminary order of forfeiture?

1          MR. FUTERFAS:  Yes, we have, your Honor.

2          THE COURT:  And, Mr. Orenstein, do you understand the

3     provisions of the consent preliminary order of forfeiture?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  Mr. Futerfas, the defense has no

6     objections to the form, content or entry of the proposed order.

7     Is that correct?

8          MR. FUTERFAS:  That is correct.

9          THE COURT:  Mr. Orenstein, have you signed the order?

10         THE DEFENDANT:  Yes, I have, your Honor.

11         THE COURT:  And do you consent to it being entered

12    against you with a money judgment and a provision that your

13    bail is to be applied toward the money judgment?

14         THE DEFENDANT:  Yes, I do, your Honor.

15         THE COURT:  Mr. Futerfas, have you also signed the

16    order?

17         MR. FUTERFAS:  Yes, I did.

18         THE COURT:  Thank you.

19         Ms. Choi, would you like to make a motion now?

20         MS. CHOI:  Yes, your Honor.  The government would move

21    at this time for the defendant to be sentenced pursuant to

22    Section 5K1.1 of the guidelines in light of his substantial

23    assistance to the government.

24         THE COURT:  Thank you.

25         I have reviewed the government and the defense

1    submission, and on the basis of the information provided in

2    those submissions, the Court finds that Mr. Orenstein has

3    provided the requisite substantial assistance, and so the

4    motion is granted.

5            I note that in light of the fact that I have granted

6    this motion pursuant to Title 18 of the United States Code,

7    Section 3553(e) and Section 5K1.1 of the Sentencing Guidelines,

8    the Court is authorized to sentence the defendant without

9    regard to the otherwise applicable mandatory minimum sentencing

10   provision associated with one of the counts, and without regard

11   to the normal range of advisory guidelines, I will depart

12   downward from the guidelines and consider the factors set forth

13   in Section 5K1.1(a)(1) through (5) in particular in fashioning

14   a sentence.

15           Is there any immigration detainer in place here?

16           MS. CHOI:  Your Honor, I am actually not sure if the

17   immigration detainer that was lodged at the beginning of the

18   proceedings is still in place.  Obviously, we've been in touch

19   with Immigration and Customs Enforcement.  They're aware of

20   these proceedings, and the judicial order of removal is

21   obviously pursuant to their knowledge of the proceedings and

22   his immigration status.

23           THE COURT:  And so just to map the proposed judicial

24   order of removal and supporting documents to the statutory

25   provision on which it's predicated, which contemplates a

1    stipulation to a judicial order of removal as part of a plea

2    agreement and providing for removal as a stipulated special

3    condition of supervision, are you presenting this as a

4    supplemental agreement to a prior written plea agreement and

5    asking that the removal be stipulated and ordered as an

6    additional special condition of supervised release?

7            MS. CHOI:  Yes, your Honor.  I think that that

8    would -- that's an accurate way of looking at it.

9            THE COURT:  Mr. Futerfas, do you have any objection to

10   construing the application in that context?

11           MR. FUTERFAS:  No, we do not.

12           THE COURT:  Have you and Mr. Orenstein discussed

13   thoroughly the application and supporting materials and his

14   obligation under this agreement or entry of a judicial order of

15   removal?

16           MR. FUTERFAS:  Yes, we have.

17           THE COURT:  Mr. Orenstein, have you discussed the

18   application and the documentation including the plea statement

19   that you have signed?

20           THE DEFENDANT:  Yes, I have, your Honor.

21           THE COURT:  And have you had an opportunity to ask

22   your lawyer all of the questions that you had about that?

23           THE DEFENDANT:  Yes, I have, your Honor.

24           THE COURT:  And do you understand the provisions of

25   it?

1          THE DEFENDANT:  Yes, I do, your Honor.

2          THE COURT:  And do you agree to my entering the order

3     of removal?

4          THE DEFENDANT:  Yes, I do, your Honor.

5          THE COURT:  Thank you.

6          Counsel, I will now hear from you on general

7     sentencing issues.

8          MR. FUTERFAS:  Thank you, your Honor.  And thank you

9     in particular for permitting an in-person proceeding this

10    morning.

11         Given the five years that have gone by since

12    Mr. Orenstein's arrest in Israel and all of the work that he

13    has done -- we have done together with the government, we

14    thought it important enough to ask your Honor for an in-person

15    proceeding, and we appreciate your Honor granting that and

16    permitting that.

17         THE COURT:  You are welcome.  I'm glad the public

18    health situation as of today permits it.

19         MR. FUTERFAS:  Yes, we all are.  Thank you, your

20    Honor.

21         This has been a long and certainly interesting

22    process.  Through that process, I have been privileged to get

23    to know both members of the government that I hadn't worked

24    with before and also Mr. Orenstein and members of his family,

25    and that has been, again, one of the benefits of this job is

1  you meet people who are interesting and are fundamentally good

2  people, and sometimes you're in a position to help them in

3  their lives and also work with members of the government who

4  are responsible and solid. So we are grateful for the entire

5  situation, at least from our perspective.

6  Many times defense lawyers such as myself will get

7  calls from people who are arrested abroad and people will say,

8  well -- they will have all kinds of thoughts or theories. Many

9  times and most often it is very disconnected from the reality

10  of the American criminal justice system, which they often don't

11  understand. In Mr. Orenstein's case, he is very -- I think as

12  our papers kind of reflect, he's very smart. He's very

13  diligent. He's very careful. Basically, his nature is that of

14  an accountant, of a serious accountant who had military

15  training. I think your Honor saw that in the paper, he had a

16  very responsible position in the navy. And he wanted,

17  obviously, counsel to come to Israel and discuss what this case

18  was about and the means to address it and also to, I think,

19  largely and significantly express his regret for having gotten

20  involved in all of this in the first place.

21  So, back in 2015 -- and this is shortly -- I mean, the

22  arrest in Israel was in July, and it wasn't but just a few

23  months later that we met in Israel and the course of conduct

24  and the course of discussions that are reflected in my

25  memorandum began. And it was clear to me after meeting him and

1    spending some time with him that Mr. Orenstein is fundamentally

2    a very -- came from a very nice family, good education, serious

3    military service and is a serious, thoughtful, good person who

4    got off track and got involved in something bigger than I think

5    he anticipated, but he got off track.  He got involved in a

6    situation and was looking immediately to make amends, looking

7    immediately to do the right thing to resolve his matter in a

8    way that made sense for him philosophically, made sense for him

9    that would reflect in some measure of atonement and reflect

10   basically the fundamental character of who he is.

11        And it also became apparent to us that because of his

12   kind of careful, deliberate and thoughtful nature, that he

13   would be an ideal information -- an ideal person to provide

14   information and to be of assistance, an ideal person to do

15   that.  And so those discussions began, and there are other --

16   there's a lot of -- obviously a lot of detail was put in our

17   memorandum about what happened thereafter.  What I can say is

18   that the -- what we were able to provide I think was an

19   enormous breakthrough, just an enormous breakthrough on many,

20   many levels in terms of something that was extremely complex.

21   It would have been -- in our judgment, and this is my personal

22   view sitting through all of those situations, that without this

23   very significant breakthrough which basically laid out

24   everything, it would have been almost impossible, I think, for

25   certain investigations to go forward or it would have taken

1    years and years for certain investigations to go forward,

2    that -- you know, without that assistance.  I don't want to go

3    into too much detail in terms of what we've said.

4              THE COURT:  I have read all of the submissions

5    carefully.

6              MR. FUTERFAS:  So, and I think also, your Honor, that

7    he is primarily responsible -- not just responsible, but

8    primarily responsible for the continuing investigations that

9    are ongoing now and will continue, I would imagine, to go on

10   for some time.  And as your Honor might note if your Honor

11   could turn to, for example, page 3 of the government's letter--

12             THE COURT:  Yes.

13             MR. FUTERFAS:  -- in the first full paragraph at the

14   top of the page, the first full paragraph, there is a

15   discussion of certain amounts of money.

16             THE COURT:  Yes.

17             MR. FUTERFAS:  And that, you know, those types of

18   figures, that kind of information was derived absolutely from

19   the work that he did early on, backed up, completely backed up

20   by massive amounts of information of all types.  Without saying

21   more than that, that's an indication of the kind of

22   responsibility that he felt he owed to the government and owed

23   to himself to just reflect who he is and to do the right thing,

24   basically.

25             The other part of the letter, I think I would just

1    draw your Honor's attention to, is on page 7.

2              THE COURT:  Yes, I have page 7 in front of me.

3              MR. FUTERFAS:  Thank you, your Honor.  At the very

4    bottom of the page, the very last sentence on that page --

5              THE COURT:  Yes.

6              MR. FUTERFAS:   -- that is -- I agree with that

7    sentence entirely, but I would suggest, your Honor, that he is

8    uniquely responsible for that sentence, uniquely responsible

9    for the things stated in that sentence because this was just

10   months after the arrest.  There is no one else on the planet

11   who could have provided this kind of assistance, and he did so,

12   and he did so again thoughtfully and carefully and

13   intelligently and very deliberately over and over and over

14   again.

15             There was never a question, never in four years, never

16   a question of honesty.  For one second there was never a

17   question of honesty.  There was never a question of whether he

18   knew something he wasn't saying or he didn't say something he

19   should have said, nothing like that in the entire period of

20   time that we were doing this.  Never even happened.  It's just

21   basically that's his character, that's who he is.  That's what

22   he was going to do, and it is really enough.  And I think the

23   very next page on the top, the next page, page 8 --

24             THE COURT:  Yes.

25             MR. FUTERFAS:   -- where that basically says it all

1   and over a period of years without a hiccup, not even for a

2   second.  That's just very, very rare in our business.  It's

3   very rare in our experience.  This was just -- there was never

4   a question ever because of the way -- of who he is and his

5   background and how he came to this process.  And so we as

6   defense counsel, Ms. Resnick and I, we were fortunate because

7   it made our jobs much easier, and it obviously lent itself to a

8   very, very strong working relationship.

9          I know that there are law enforcement who wanted to be

10  here today but who could not be because of various issues, but

11  I would I say that if they could be here, a number of people

12  would have been here who worked with Mr. Orenstein in the past

13  four or five years and would have been here just to express

14  their support.

15         Eventually, as your Honor recalls from the memo, there

16  were numbers of meetings abroad.  Thereafter, he waived

17  extradition, came to this country, continued a whole series of

18  meetings about different kinds of matters, was prepared to

19  testify in any of these cases, any of the matters that might

20  still be before the Court, and there is no question that I

21  think people understood that because of just the docket and how

22  things unfolded, that what his position was and people who knew

23  him knew that he was honest and forthright and solid, and I

24  think that made a huge difference in whatever ongoing matters

25  might still be occurring.

1      So, I would say, your Honor, again, trying to be just

2   a little bit discrete in my remarks, but I would say that

3   Mr. Orenstein's efforts from the very beginning, and I mean

4   from the very beginning, from day one, shows rehabilitation.

5   It shows a very strong conscious decision to make amends, to

6   atone for things that he did wrong, that he takes full

7   responsibility for.

8      He's been out on bail.  Bail was granted, I think,

9   about August 11, if I recall, or August 12, 2016.  It's been

10  four years and one or two months, four years and two months.

11  Again, on bail for four years here.  No incidents; no issues.

12  Quite frankly, the only issues have been where we on the

13  defense side have been harassing Ms. Choi to ask for a later

14  curfew or something else or whatever just to give a little bit

15  of relief to him during this period; but aside from our

16  bothering her, there have been no issues with respect to

17  Mr. Orenstein at all.  Whatever conditions have been put in

18  place over the last four years, four years and two months were

19  abided by scrupulously.  That's his nature; it's his character.

20  And it obviously made our job so much easier in that regard.

21  It's all part of the same package that I am met and Ms. Resnick

22  and I had the opportunity to work with Mr. Orenstein during

23  this whole time.  It's all part and parcel of the same.

24      So our request for with respect to what an appropriate

25  sentence would be in this case, your Honor, is in our

1  memorandum.  He has served -- he did about -- served about 11

2  months in Israel, served about a month or two here, I think

3  about 13 months has served time, and he's been out on bail four

4  years since then without any incident to the extent that I

5  would just ask your Honor to consider all of that and consider

6  given these circumstances that the sentence we are asking for

7  in the memorandum your Honor seriously consider and impose.

8      THE COURT:  Just to be clear, you're asking for a time

9  served sentence.

10     MR. FUTERFAS:  Yes, we are, your Honor.  Thank you.

11 There is an additional factor that wasn't in effect a year or

12 two ago.  Obviously, that's the current pandemic.  I, my

13 office, Ms. Resnick and I, we've represented people that have

14 received sentences, and I'm sure your Honor is very, very well

15 aware of this, different kind of sentences and after six

16 months, eight months, a year, or 13 months, they've been

17 released anyway because of the impact that the pandemic is

18 having on various institutions.  That's a factor that is

19 present here that wasn't obviously present a year ago or two

20 years ago or when he began his work with the government, but

21 it's certainly a factor now.

22     But even putting that aside, this is -- I urge your

23 Honor, and I think the government agrees, this is one of those

24 cases where this is just what you really want to see:  Someone

25 with very deep knowledge and who is honest and trustworthy

1  right off the bat, makes a decision which is of immense,

2  absolutely consequential immense impact on the government's

3  ability to further their various investigations, and that's

4  what happened here.

5      Thank you, your Honor.

6      THE COURT:  Thank you, Mr. Futerfas.  My custom is to

7  hear from both attorneys before turning to the defendant for

8  remarks.  So I will now turn to Ms. Choi.

9      MS. CHOI:  Your Honor, I will be brief.  I just wanted

10  to mirror most of what Mr. Futerfas said with regard to this

11  particular defendant, with highlighting a few small points

12  simply because I know your Honor has read all of the

13  submissions carefully, and so I don't want to take up any more

14  of the Court's time.

15      I just wanted to emphasize that it is true that this

16  particular defendant's cooperation was early and immediate.  I

17  think -- I've been doing this for some time now, and oftentimes

18  for defendants that are charged with similar things that this

19  defendant was, the decision to cooperate can sometimes take

20  some period of time.  Oftentimes you have to meet consistently

21  and over some period with that defendant in order for that

22  defendant to open up to his full culpability and the details

23  surrounding what he did.  That was not the case with

24  Mr. Orenstein.  It's a night-and-day situation.  He was

25  immediately open.  We had no reason to believe that he was

1   holding any information back with regard to the knowledge that

2   he had.

3       Given that his role was that of an accountant, he

4   supplied the detail-oriented skills that he acquired in his

5   business dealings to the work that he performed at the request

6   of the government and was very precise in all of his answers in

7   a way that I think made him a very easy witness to learn from

8   and to deal with.  Had there been any situations in which he

9   would have been called as a witness, I have no doubt that he

10  would have made an excellent witness in light of the diligence

11  which he applied himself to his work and providing substantial

12  assistance to the government

13      One minor note, your Honor.  I think you probably

14  already picked up on this, as Mr. Futerfas said, on page 3,

15  there are certain volumes that are reflected with regard to

16  financial situations.  I would just urge your Honor to compare

17  those to the forfeiture amount which your Honor now understands

18  the basis for.  I think that is a fair reflection of his role

19  within the scope of this larger organization.  That's not to

20  say he wasn't involved.  Obviously, he was, and he did play a

21  significant role, but I think if you compare those two figures,

22  you can understand sort of comparatively the amount of -- his

23  role in the hierarchy, as it were, and the amount of control he

24  had over these items.  I think he is properly viewed as someone

25  who was a good soldier, a good deputy, but he was not some sort

1    of mastermind to generate these numbers.  And so I think that

2    is a good -- a benchmark that your Honor may want to use in

3    assessing where your Honor thinks an appropriate sentence is

4    with regard to this particular defendant.

5              I don't know if your Honor has any other questions of

6    the government; we're happy to answer them at this time

7              THE COURT:  No, I have no specific questions.  Thank

8    you, Ms. Choi.

9              Mr. Orenstein, would you like to speak for yourself

10   before I decide on your sentence?

11             THE DEFENDANT:  Yes.  Thank you, your Honor.

12             THE COURT:  Thank you.

13             THE DEFENDANT:  Thank you for letting me speak, your

14   Honor.  It is my fault that I am standing before you today.  It

15   is no one else's false.  It is surely not Mr. --

16             MR. FUTERFAS:  Go slowly for the court reporter.

17             THE COURT:  While you're there, Mr. Futerfas, would

18   you pull the base of the microphone closer to Mr. Orenstein.

19   Mr. Futerfas, I try to discourage people from -- no, no.  Move

20   away.  Move away.  Trying to enforce social distancing here,

21   that's why we have those little phones.

22             So, Mr. Orenstein, just speak out as if you expect me

23   to hear you without the microphone.  I tell people to pretend

24   they're at the opera.  You're the diva, so as long as you

25   project like that, I'll be able to hear you fine, and go a

1  little bit slower so that the court reporter can get everything

2  down.

3  THE DEFENDANT:  It is my fault.  My mistake.  I am

4  here because of my own conduct.  I grew up in a good home with

5  amazing parents.  I never thought in a million years that I

6  would not lead a law-abiding life.  I was taught excellent

7  morals.  For my military service in Israel, I volunteered to

8  serve in the navy, but I was responsible for weapons operations

9  and training.  Later, I completed the very difficulty CPA

10  course of study and was on a steady path to live a law-abiding

11  life.  But at some point in my relationship with Gery Shalon I

12  crossed the line and I continued to cross that line for several

13  years while working for him.  It was profitable.  He paid me

14  well.  So I continued under the employment even though I knew

15  his business was not lawful.  I knew that the deals we made

16  with banks around the world were not lawful or legal.  And I

17  knew that the processes and procedures we were using were not

18  lawful or legal.

19  I am extremely remorseful for my conduct.  Every

20  single day, every moment since my arrest, during the period of

21  my detention, and while I have been here in New York awaiting

22  sentencing.

23  I apologize to the Court.  I apologize to the

24  government for all its work in prosecuting this case and, of

25  course, I apologize to my family.  I have not seen my children

24

KAMQoreS

1   except a handful of times over the last five years for short

2   stretches.  I regret that my actions have denied my daughters

3   the right to spend the past five years with their father.  My

4   actions denied them my help in their schoolwork, my

5   encouragement and being there for all the special things we

6   miss together, the holidays and birthdays.  I take full and

7   complete responsibility for all of this.

8          After the initial shock of my arrest and detention, I

9   quickly realized that I needed to do the right thing, for my

10  family, for my daughters, for the government, and for myself.

11  I was fortunate to find a very good U.S. counsel who came to

12  Israel to explain my options in the American criminal justice

13  system.  I saw an opportunity to make amends for my stupidity

14  and poor judgment, and I immediately started on that path.

15         Because of my role in the businesses and my skills, I

16  was able to provide enormous amounts of information and data

17  about operations all around the world.  This was the least I

18  could do to in some small way begin to atone for my conduct.  I

19  have seen and mostly felt how my mistakes have hurt the people

20  I love the most, and for that I will be forever sorry.  I know

21  that I can never cover my debt to this country and to my

22  family.  I can never repay the government for the opportunity

23  to make amends for my conduct, and I personally thank Ms. Eun

24  Young and the agents they allowed my in some small measure to

25  atone and make amends for my conduct.  What I can do, however,

SOUTHERN DISTRICT REPORTERS, P.C.

KAMQoreS

1    is promise I will never put anyone, this government or my

2    family, in such a position again.  Thank you.

3            THE COURT:  Thank you, Mr. Orenstein.  I'm very glad

4    to hear your words.

5            Now I would ask everyone to sit with me quietly for a

6    couple of minutes while I reflect on what I've heard while I

7    make my decision, and then I will explain and announce it.

8            (Pause)

9            Thank you for your patience.  I read very carefully

10   everything that was submitted to me before today, and I have

11   listened very carefully to everything that has been said here

12   in court today.  I adopt the factual recitation in the

13   presentence report and the facts set forth in the sealed

14   submissions.

15           This Court has discretion taking into account the

16   applicable statutory provisions in exercising its power under

17   Section 3553(a) of Title 18 to determine the particular

18   sentence to be imposed in each particular case.  Section

19   3553(a) requires the Court to consider a number of specific

20   factors and sentencing goals, as well as the provisions of the

21   Sentencing Guidelines and requires the Court to impose a

22   sentence that is sufficient but not greater than necessary to

23   comply with the statutory sentencing purposes.

24           As to the Sentencing Guidelines, I conclude that the

25   applicable guideline offense level is 43 and that the

KAMQoreS

1  applicable Criminal History Category is I for the reasons that

2  are detailed in the presentence report, and I adopt the

3  grouping of charges analysis set forth in the presentence

4  report.  Accordingly, the advisory guideline range for a

5  custodial sentence is life plus two years to run consecutively

6  to the life sentence as required by statute for the Count Two

7  aggravated identity theft conviction.  I have used the

8  November 1, 2018 edition of the guidelines manual in making

9  these determinations.

10         As I previously noted, I am not bound by the statutory

11  mandatory minimum sentencing provisions, and I will depart

12  downward from the advisory guidelines in light of

13  Mr. Orenstein's substantial assistance in the investigation and

14  prosecution of other persons.  I find based on the submissions

15  that there is ample basis for a significant downward departure

16  pursuant to Section 5K1.1 based on Mr. Orenstein's fairly

17  extensive and very effective cooperation.

18         Ms. Choi, I thought you looked at me as if I were

19  making a mistake at some point a minute ago?

20         MS. CHOI:  No, your Honor.  I just realized that in

21  making my motion under 5K1.1, I didn't expressly reference 18

22  U.S.C. 3553(e), and I just wanted to make sure I remembered to

23  mark that for the record to the extent the government didn't

24  expressly move on that statutory basis as well.

25         THE COURT:  Thank you.  I think in granting your

1  motion, I did expressly reference 3553(e).

2          MS. CHOI:  Thank you, your Honor.

3          THE COURT:  So we're covered, all right.

4          So the Court has also considered carefully all of the

5  statutory sentencing factors and goals that are relevant under

6  Section 3553(a) and all of the information that has been put

7  before the Court in light those factors and goals, and I will

8  briefly address certain of the factors.

9          First, the nature and circumstances of the offense.

10  Mr. Orenstein and his co-defendants engaged in large-scale,

11  extensive financial crimes.  Mr. Orenstein's role was very,

12  very significant, but, as the government has proffered,

13  relatively limited to the roles of certain other

14  co-conspirators in that Mr. Orenstein's background whose

15  background was in accounting was involved in managing the

16  finances of the illegal operations, including payment

17  processing operations to disguise credit card payments that

18  would otherwise have not been legal and would have been flagged

19  by banks.  His role in the scheme not only violated this

20  country's laws regulating gambling and financial transactions

21  but had the effect of undermining the integrity of the

22  international credit card processing system, and so his

23  criminal conduct was very serious indeed on the personal level

24  and was part of a conspiracy that had enormous cash flow and

25  financial impact.  His activities also facilitated illegal

1  activities that were primarily undertaken and directed by

2  co-conspirators in terms of the various frauds and identity

3  theft.

4         As to his personal history and characteristics, as

5  Mr. Orenstein has acknowledged even in his remarks today, and

6  as his counsel has acknowledged, Mr. Orenstein did not come to

7  this activity out of any hardship or out of any lack of moral

8  training in his household.  He came from a good family and a

9  background of education and public service, military service

10 that prepared him to live a law-abiding, positive and

11 successful life, which he did by all accounts up until his

12 involvement with this conspiracy.  He served with distinction

13 in the Israeli Navy during his military service and

14 successfully undertook and completed a very, very difficult and

15 challenging course of study to be a certified public

16 accountant.  The letters that I have received from his family

17 members and friends testify to his otherwise upstanding life

18 and to his care for younger siblings when his parents

19 separated, and his grandmother also speaks well of him and of

20 her love for him.

21        When he was arrested, he does appear to have

22 immediately turned his focus and his goals, and to have devoted

23 himself not only to leading a new law-abiding life and

24 cooperating with authorities, but he has also continued a prior

25 pattern of helping others, which speaks well of his character

1    overall.  He is reported to have served while he was in custody

2    in Israel in a position called a supporter to fellow inmates

3    who were in need of help and also to have served as a tutor for

4    other inmates.  And in the United States I am informed in the

5    letters he has engaged in quiet acts of charity and involvement

6    with his religious community.  His time in the United States

7    has been without incident in terms of his compliance with

8    supervision, and I am told that he spends long periods of time

9    helping his daughters with their schoolwork at distance and

10   providing care for members of his family who remain in Israel

11   as well as for his partner here.  And his remarks here in court

12   bespeak deep remorse and a desire for atonement.

13          And so the Court has considered his conduct, both

14   illegal and by way of cooperation and atonement and his

15   personal attitude and orientation to his past conduct and his

16   future goals in assessing whether a further custodial sentence

17   is needed to address the sentencing considerations of

18   punishment, deterrence and promotion of respect for the law.

19          The Court finds that Mr. Orenstein has shown great

20   respect for the law and has undertaken to turn away from,

21   reject, and burn any bridges that he had to the illegal aspects

22   of his conduct since his arrest and consistently over the past

23   five years, and so there is little, if any, need for a

24   custodial sentence to promote those goals and the Court so

25   finds.

1    With respect to restitution, the Court finds in light

2  of the government's representations that the complication and

3  prolongation of the sentencing process that would result from

4  the fashioning of an order of restitution outweighs the need to

5  provide restitution to any victims of Mr. Orenstein's conduct,

6  and the Court refers to Title 18 of the United States Code,

7  Section 3663(a)(1)(B)(ii) as authorization for the Court to

8  decline to impose an order of restitution here.

9    And the Court has also considered, as it must,

10  avoiding unwarranted disparities in Section 5K1.1, and the

11  conduct that satisfies the departure provisions of that element

12  of the Sentencing Guidelines is the appropriate basis for

13  disparities from sentences that might be imposed pursuant to

14  the guidelines for facially similar criminal conduct and, of

15  course, the Court sentences Mr. Orenstein, as it does each

16  defendant, based on his own conduct and relevant factors.

17    And so the Court finds in consideration of

18  Mr. Orenstein's early extensive and very effective assistance

19  and his demonstration of self-rehabilitation and discipline

20  since his arrest, the period of more than a year that he has

21  spent in custody, and the lengthy period of time for which he

22  has lived under supervision without incident that a -- the

23  Court finds that a very substantial variance from the guideline

24  range is necessary to fashion a sentence that is reasonable,

25  appropriate, and no greater than necessary to address the

1    statutory purposes of sentencing.

2            The Court concludes after considering 5K1 and the full

3    range of Section 3553(a) factors that such a substantial

4    downward departure is necessary.  The Court also finds that

5    Mr. Orenstein is required to forfeit $1,837,043 representing

6    the proceeds he obtained directly or indirectly as a result of

7    his criminal activity as reflected in the proposed consent

8    order of forfeiture.

9            I will now state the sentence that I intend to impose.

10   Mr. Orenstein, would you and your counsel please stand socially

11   distanced.  Thank you.

12           Mr. Orenstein, it is the judgment of this Court that

13   you are to be sentenced to time served on each of your eight

14   counts of conviction to be followed by one year of supervised

15   release on Count Two and three years of supervised release on

16   Counts One and Three through Eight to run concurrently.  The

17   standard conditions of supervision 1 through 11 and 13 as

18   detailed in the Sentencing Guidelines manual will apply.  Those

19   were written out specifically in the PSR.  The probation

20   department will explain them to you as appropriate, and I'm

21   sure that Mr. Futerfas will have something to say to you about

22   them as well.

23           In addition, you will be subject to the following

24   mandatory conditions:

25           You must not commit another federal, state or local

1    crime.

2            You must not illegally possess a controlled substance.

3            You must cooperate in the collection of DNA as

4    directed by the probation officer.

5            I will suspend the mandatory drug testing condition

6    based on the probation office's determination, which I am happy

7    to adopt, that you pose a low risk of future substance abuse.

8            You must also meet the following special conditions:

9    You must submit your person, any property, residence, vehicle,

10   papers, computer, other electronic communication, data storage

11   devices, cloud storage or media, and effects to a search by any

12   United States Probation Officer, and if needed, with the

13   assistance of any law enforcement.  This search is to be

14   conducted when there is a reasonable suspicion concerning

15   violation of a condition of supervision or unlawful conduct by

16   you, the person being supervised.  Failure to submit to a

17   search may be grounds for revocation of supervised release, and

18   you must warn any other occupants that the premise may be

19   subject to search pursuant to this condition.  Any search must

20   be conducted at a reasonable time and in a reasonable manner.

21           You must provide the probation officer with access to

22   any requested financial information.  You must obey the

23   immigration laws and comply with the directives of the

24   immigration authorities.  And if the probation officer

25   determines based on your criminal record, personal history, or

1  characteristics that you pose a risk to another person,

2  including an organization, the probation officer, with the

3  prior approval of this Court, may require you to notify the

4  person about the risk, and you must comply with that

5  instruction.  The probation officer may contact the person and

6  confirm that you have notified the person about the risk.  And

7  if you are in the United States, you will be supervised by your

8  district of residence.

9      You must stipulate to the entry of a judicial order of

10  removal from the United States pursuant to Section 238(c)(5) of

11  the Immigration and Naturalization Act, which is Title 8 of the

12  United States Code, section 1228(c)(5), and you must cooperate

13  with the government and immigration authorities in connection

14  with the enforcement of the order of judicial removal.

15      In light of your substantial forfeiture obligation and

16  your finances, I will not impose a fine on you, but I will

17  order that you pay to the United States the mandatory special

18  assessment of $800, which is $100 for each of your counts of

19  conviction, and that is payable immediately.

20      As I indicated before, and consistent with the consent

21  order of forfeiture, I will order you to forfeit to the United

22  States $1,837,043 representing the proceeds of your criminal

23  activity.  This will be joint and several with any such

24  obligation imposed on your co-defendant, Gery Shalon, and the

25  $50,000 United States currency bail that was posted will be

1    credited against the forfeiture obligation.

2           I believe that this sentence is reasonable,

3    sufficient, appropriate, and no greater than necessary to

4    satisfy the statutory purposes of sentencing which include

5    punishment and deterrence.

6           Does either counsel know of any legal reason why the

7    sentence should not be imposed as stated?

8           MS. CHOI:  Not from the government, your Honor.

9           MR. FUTERFAS:  No, your Honor.

10          THE COURT:  The sentence as stated is imposed.

11          I must say something important to you about appeal

12   rights, Mr. Orenstein.  To the extent you have not given up

13   your right to appeal through your guilty plea, you have the

14   right to appeal this sentence.  If you are unable to pay the

15   cost of an appeal, you may apply for leave to appeal

16   in forma pauperis.  At your request, the Clerk of Court will

17   file a notice of appeal for you.  Any notice of appeal must be

18   filed within 14 days of the judgment of conviction, so make

19   sure that you discuss this with Mr. Futerfas promptly.

20          Ms. Choi, are there remaining counts or underlying

21   indictments that need to be addressed?

22          MS. CHOI:  Yes, your Honor.  The government moves at

23   this time to dismiss all open counts on the original indictment

24   and the S1 indictment, your Honor.

25          THE COURT:  Was there a relevant S2?

1    MS. CHOI:  I do not believe for this defendant, your

2    Honor.  Any open counts, we'll just put any open counts, we

3    request be dismissed.

4    THE COURT:  Very well.  Any open counts and

5    indictments are dismissed.

6    So I would just like to say a few more words to you,

7    Mr. Orenstein, and I thank you for listening.

8    It's clear that you devoted yourself extensively to a

9    very serious criminal enterprise, but you have turned your back

10   on that activity and in fact have been of great assistance to

11   the authorities from early on in exploring, understanding, and

12   prosecuting the range of activities and actors with which you

13   were involved.

14   And so while you had made very poor choices in

15   engaging in this activity, you have shown through your conduct

16   that you wish to make good, lawful, and positive choices, and

17   you have not just talked about that.  You have carried through

18   in important, tangible ways.  And you are clearly a person who

19   is capable of excelling and has excelled in everything that he

20   has undertaken, and so I am confident that you will be able to

21   keep the promise you made in open court today; that you will

22   not go back to criminal conduct; and I urge you also to

23   specifically promise yourself and the family that you love so,

24   the children you miss so, that you will never again do anything

25   that could even put you at risk of going back to prison.  You

1 understand how precious they are and how precious your life is

2 and the honor in which you clearly wish to live, and your

3 family are anxious to see you. Make sure that your life is

4 always an encouragement to them, and that you are able to be

5 present for them. And I wish you and your family continued

6 strength.

7 To the extent you remain in the United States, you

8 will have the supervision of the probation department and the

9 support of the probation department. In further establishing

10 your life, I have to caution you that you must comply strictly

11 with all of the conditions set for the supervised release. If

12 you are brought back before me for violating any of those

13 conditions, I may sentence you to a term of imprisonment, so

14 please don't put me ever to having to make a decision like

15 that. I thank you for listening, and again, I wish you and

16 your family courage, strength and safety.

17 I thank counsel for their dedicated work over several

18 years on this case. I will direct that a copy of the

19 presentence report be prepared for the Sentencing Commission.

20 All other copies of the report must remain confidential. If an

21 appeal is taken, counsel on appeal are to be permitted access

22 to the report. The Court will sign and enter the proposed

23 order of judicial removal and will also file the supporting

24 papers for that order on the public docket, and the Court will

25 also sign and enter the consent order of forfeiture filing that

1    on the public docket, and I will expect Mr. Futerfas on

2    Mr. Orenstein's behalf to contact probation and also work with

3    the immigration authorities to make sure that both supervision

4    and appropriate action on the removal order take place.

5         Counsel, is there anything further that we should take

6    up together this morning?

7         MR. FUTERFAS:  I don't believe so, your Honor.  I know

8    that at some point Mr. Orenstein is obviously making plans or

9    will make plans to leave.  I presume we contact probation.  He

10   has an ankle bracelet.  I guess we contact them, and they will

11   arrange for that procedure when he's ready to go or whatever

12   the process is, we will work that through that office.

13        THE COURT:  Yes.  And you should contact them.  There

14   may need to be some transfer of the title of the ankle bracelet

15   from pretrial to probation, but as long as you make contact

16   with both of those departments, I'm sure that they will give

17   you appropriate instruction.

18        And Ms. Ng will email to Mr. Futerfas a summary of the

19   sentencing.  Is that correct, Ms. Ng, or no or just send it to

20   probation?

21        DEPUTY CLERK:  No.  We just -- we don't even inform

22   probation any more because they're not using that system any

23   more.

24        THE COURT:  OK.  Apparently, we have upgraded our

25   software.  So the things that are supposed to happen will

1    happen, and again, I thank you all.  I wish you all safety and

2    good health.

3              Ms. Choi?

4              MS. CHOI:  Your Honor, one other clarifying note along

5    the same lines with regard to the bracelet, I believe

6    Mr. Orenstein may need his passport in order to facilitate his

7    purchase of a ticket to go back to Israel.  I assume that will

8    happen quickly, but he may need a separate endorsement from the

9    Court because I believe that pretrial services has it, and I

10   want to make clear for the record, the government has no

11   objection for his access to his passport so he may go home.

12             THE COURT:  So what I will need is a letter making

13   that specific request and making clear that there is consent

14   all around to that being released, and then I can endorse it,

15   and it will be clear for everyone.

16             MS. CHOI:  Great.  Thank you, your Honor.

17             MR. FUTERFAS:  Thank you for allowing us to appear in

18   person, your Honor.  Appreciate it very much.

19             THE COURT:  It is good to see you all.  And,

20   Mr. Orenstein, I hope I never see you good.  So good luck

21   everyone.  Thank you.

22             (Adjourned)

23

24

25